A. A. SPURLIN, surviving parent of Douglas J. Spurlin, a minor, Deceased, et al., Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 74–3080.

United States Court of Appeals, Fifth Circuit.

March 15, 1976.

Rehearing and Rehearing En Banc Denied May 10, 1976.

See 531 F.2d 279.

Francis H. Hare, Sr., Birmingham, Ala., Carey Walker, Jr., Harvey B. Morris, Huntsville, Ala., Truman Hobbs, Montgomery, Ala., for plaintiffs-appellants.

Jerry B. Ange, Ralph H. Ford, Huntsville, Ala., for defendant-appellee.

Before TUTTLE, THORNBERRY and COLEMAN, Circuit Judges.

TUTTLE, Circuit Judge:

This diversity suit arises out of a school bus crash which occurred in Morgan County, Alabama, on April 23, 1968, when the bus's brakes failed. Two wrongful death suits and twenty-two personal injury actions were filed, on behalf of the children who were in the bus at the time, against the manufacturer of the school bus chassis, General Motors Corporation. Following consolidation of the cases for trial by the district court,[1] a six-person jury heard evidence for approximately two weeks. The court then submitted the cases on the theory of alleged negligent design of the braking system,[2] and the jury returned a verdict for the plaintiffs, awarding damages in the amount of $70,000 each in the wrongful death cases. The district court, however, granted defendant's post-trial motions for judgment notwithstanding the verdict and, in the alternative, a new trial, on the ground that the verdict was not supported by the evidence. This appeal followed. We consider the district court's two post-trial rulings in turn, beginning with its grant of General Motors' motion for judgment notwithstanding the verdict.

## I. CORRECTNESS OF THE DISTRICT COURT'S GRANT OF JUDGMENT NOTWITHSTANDING THE VERDICT.

### A. The Standard of Review.

The applicable standard of review for judging the correctness of a district court's grant or denial of a motion for judgment notwithstanding the verdict was carefully delineated by this Court in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (*en banc*):

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. . . . [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions shall be denied, and the case submitted to the jury. . . . There must be a conflict on substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 374–375 (footnotes omitted).

This test requires us to scrutinize the record carefully, considering all the evidence which was submitted to the jury for its consideration, but viewing it in

---

1. Over defendant's objection, the district court consolidated all of the cases for trial on the issue of liability, and additionally consolidated the two wrongful death actions for trial on the issue of damages. The latter were brought under the Alabama Homicide Act, Title 7, § 119, under which a successful plaintiff is awarded punitive rather than compensatory damages.

2. The court refused to instruct the jury on the plaintiffs' two other proposed theories of liability: (1) alleged negligence in manufacture and assembly of the braking components, and (2) strict liability in tort.

the manner most favorable to the plaintiffs, as the parties opposed to the motion for judgment n. o. v. It is important to note at the outset, therefore, that defendant General Motors has not assigned, as separate grounds for cross-appeal, the commission of any errors by the district court in admitting into evidence any particular items or testimony given by any of the witnesses. This Court, therefore, is not required to consider the issue of the scope of the evidence which was properly before the jury in reaching its verdict, but is free to examine and rely upon all the evidence which the district court charged the jury it could consider in deciding the case.

## B. *Plaintiffs' Theory of Recovery.*

Briefly stated, the theory upon which the cases were submitted to the jury was one of alleged negligent design of the bus's braking system by General Motors, coupled with a failure to warn of the unique problems and need for frequent servicing and maintenance associated with operating school buses. Specifically, the plaintiffs contended that the braking system with which the 1965 66-passenger school bus at issue was equipped was not reasonably safe for the use for which it was intended in that: (1) the single hydraulic braking system on the bus was a dangerous system because of the inevitability of total failure of braking power in the event of a loss of brake fluid through undetected leakage; (2) there was no effective emergency brake on the bus, only a parking brake which was not intended to stop a loaded, moving vehicle such as this one; and (3) there was no warning device of any sort, such as a gauge or warning light, to indicate when the brake fluid in the reservoir was running low. Furthermore, the plaintiffs alleged, the owner's manual which came with the bus suggested brake fluid level checks only every 6,000 miles, which on a school bus would be only once a year, whereas safe maintenance practices would actually require checking the brake fluid in such a vehicle every two weeks to a month.

## C. *Sufficiency of the Evidence Under the Boeing Co. Test.*

 In charging the jury, the district court clearly and correctly outlined the four elements necessary for recovery in a negligence action: (1) the existence of a duty on the part of the defendant; (2) a breach of that duty; (3) the existence of a causal relationship between the defendant's conduct and the plaintiff's injury; and (4) resulting injury to the plaintiff. *Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176 (5th Cir. 1971). Since the existence of the final element was in effect uncontested in any of the consolidated cases, and since the existence and nature of the scope of the duty owed by a particular defendant is a question of law for the court, *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), and neither side has asserted that the district court erred in defining GM's duty in this case, we find it necessary to examine the sufficiency of the evidence introduced at trial only with respect to the second and third elements of the plaintiffs' cause of action.

### 1. *The Breach of Duty Issue.*

The district court instructed the jury that General Motors, as an automotive manufacturer, had a duty to design and build a bus chassis reasonably fit for the purpose for which it was made, without hidden or latent defects which would make it "imminently and inherently dangerous" to persons using it. The defendant was required to exercise reasonable care in the adoption of a safe plan or design, the court charged the jury, and the standard by which its conduct was to be judged was that of a "reasonably prudent manufacturer of school bus chassis in 1965."

 Given this definition of the defendant's duty, the jury was then in effect required to decide whether the braking system used on the bus at issue was "imminently" or "inherently" dangerous so as to render the vehicle unsafe for its

intended use, keeping in mind the state of the art in the automotive industry in 1965 and the extent to which alternative braking systems which were reasonably safe were available. While it is unnecessary to catalogue in detail the evidence presented on these issues at trial, a brief summary of the mechanics involved in the braking system in use on this particular bus, and the testimony offered by witnesses on both sides regarding its safety will serve to support our holding that there was sufficient "substantial evidence" as required by *Boeing Co. v. Shipman, supra*, for the jury to have found that the braking system on the bus was not reasonably safe and consequently that GM had breached its duty as a manufacturer.

The bus which crashed was a 1965 66-passenger school bus, the chassis portion of which was designed and built by General Motors. It was equipped with a single hydraulic braking system, containing a single reservoir in the master cylinder supplying all of the brake fluid which transmits pressure to the brake cylinders on each wheel. In such a system, a leak which exhausts the brake fluid in the reservoir causes a sudden and total failure of braking ability, as happened in this case. A dual hydraulic braking system, on the other hand, is equipped with two brake fluid reservoirs, each of which services the brake cylinders on two separate wheels, so that in the event of loss of fluid from one of the reservoirs, whether from leakage or some other cause, the vehicle continues to have braking power on the wheels serviced by the other reservoir. The only other braking mechanism with which the bus in this case was equipped was a parking brake, which by the admission of all those who testified at the trial was never intended to function as an emergency brake.

We find that the evidence offered at trial on the safety of the braking system as described above was more than sufficient to withstand a motion for judgment n. o. v. under the test set out in *Boeing*. Although a GM Senior Design Engineer, Paul Fisher, testified that he considered a dual hydraulic braking system to be less reliable than a single system (because of the existence of more parts and consequently a greater possibility that one of them could malfunction), the plaintiffs put on expert testimony that the single hydraulic braking system in use on the bus at issue was not reasonably safe for the purpose for which it was intended. Both of plaintiffs' expert witnesses, Professor Milton Koenig, a professor of mechanical engineering at Wayne State University in Detroit, and Dr. Leslie W. Ball, Director of Safety at Marshall Space Flight Center in Huntsville, Alabama, were found by the district court to be qualified to give expert opinions on the braking design issues on which they testified. Both Professor Koenig and Dr. Ball stated several times during their testimony that they considered a single hydraulic braking system such as was used on the bus in this case to be "inherently unsafe" or "not reasonably safe." Certainly the jury could have found, from this expert testimony admitted by the district court, that the braking system on the bus was not a sufficiently safe one.

Furthermore, on the issue of the emergency brake, the testimony on both sides was virtually unanimous that a safe system must include an emergency brake and that the parking brake with which the bus was equipped was never intended to function as an emergency brake, in the sense of stopping a large loaded moving vehicle. It was designed to hold the vehicle stationary when parked. There was, however, conflicting evidence on the actual stopping ability of the parking brake; GM personnel testified that simulated tests were made under "substantially similar" circumstances at GM testing grounds in Detroit which proved that the parking brake on the bus could have stopped the bus in about 230 feet if it had been in working order and if the driver had applied it. The state trooper who investigated the accident, however, admitted on the witness stand that it might have been dangerous

to attempt to stop the bus with the parking brake; since the brake operated by making contact with the drive shaft, there was a possibility of the drive shaft breaking if the parking brake were to be applied while the bus was travelling at 25 or 30 miles per hour, as was the case here.[3] Given the existence of substantial conflicting evidence from which reasonable persons might draw differing conclusions, it is clear that the jury could have concluded that the absence of an effective emergency brake on the bus also constituted negligent design on the part of the defendant.

Having concluded that there was sufficient evidence presented from which the jury could find that the braking system on the bus rendered it not reasonably safe for the use for which it was intended, we now turn to the issue of the evidence concerning the state of the art with respect to braking systems in the automotive industry in 1964, when the bus involved here was manufactured. The judge instructed the jury that it could consider the following evidence which had been admitted at trial, all of which, in the opinion of this Court, constitutes substantial evidence of the kind required by *Boeing Co. v. Shipman* before a grant of judgment notwithstanding the verdict can be reversed. First, it was established without contradiction at trial that both Cadillac and American Motors passenger cars had been equipped with dual hydraulic braking systems for several years prior to 1964. Second, plaintiffs' expert witnesses testified that dual hydraulic systems were not only in use on large buses in England and Europe prior to 1964 but were actually required by law in some countries. Finally, it was established that both interstate buses and many public transit buses in the United States in 1964 were equipped with air brakes, a system which is "failsafe" in that in the event of a malfunc-

tion, the brakes automatically take effect; additionally, GM Engineer Fisher testified that air brakes were optional equipment on the type of bus chassis which the Morgan County School Board ordered in this case, thus showing that at least one "failsafe" braking system was developed and available for use on school bus chassis in 1964. General Motors offered counterevidence seeking to show that the dual hydraulic braking system contended for by plaintiffs was not sufficiently developed so as to be available on large vehicles in 1964; however, a GM engineer gave testimony at trial from which it could have reasonably been inferred that work on the dual system was delayed as a result of an economic policy decision at GM in order to give precedence to further development work on passenger car engines. It thus appears clear that considering the record as a whole there was substantial evidence "of such quality and weight" that reasonable persons might draw differing conclusions as to the state of the art with respect to the automotive braking system for school buses which were reasonably safe in comparison to the single hydraulic braking system.

Since we have concluded that there was sufficient evidence under *Boeing Co. v. Shipman* to go to the jury on both the issue of the reasonable safety of the braking system in use on the bus, and on the issue of the state of the art of braking systems in 1964, it follows that there was enough evidence from which the jury could find that General Motors had breached its duty as a manufacturer. Thus the only remaining question to be considered in determining whether the court below erred in granting GM's motion for judgment n. o. v. is whether there was sufficient evidence to create a jury question on the issue of proximate cause.

---

**3.** Here, there was no effective *parking* brake, because it had been permitted to get out of order. There was thus no opportunity for this driver to have used it. This, of course, does not affect the question of responsibility of the manufacturer to install an effective *emergency* brake because it does not follow that if one had been present it would have been out of order.

### 2. *Proximate Cause.*

As stated previously, in order for the plaintiffs to recover in this case, they had to prove to the jury's satisfaction that the defendant's negligence in designing the braking system on the bus caused the accident resulting in the injuries and deaths underlying the instant lawsuits. As the district court instructed the jury, the law requires that the defendant's negligence act as the proximate, as opposed to a remote, cause of the plaintiff's injury. *See, e. g., City of Mobile v. Havard*, 289 Ala. 532, 268 So.2d 805 (1972). General Motors' primary defense in this case was that the leakage of brake fluid which ultimately resulted in the brake failure at issue was due to negligence on the part of school board officials who failed to have the bus properly serviced and maintained at the necessary intervals. The district court therefore properly instructed the jury that if they found that there was an intervening act of negligence, either on the part of the school board or on the part of the driver (in failing to notice that the brake pedal was "giving" more than normal, indicating some loss of fluid), which acted as the sole cause of the accident, GM could not be held liable. The court further instructed the jury, however, that even if they found independent negligence by the Board or the driver, GM could nevertheless be held liable if: (1) the other negligent act was concurrent with that of the defendant, so that both acts jointly caused the injury, *see, e. g., Greyhound Corp. v. Brown*, 269 Ala. 520, 113 So.2d 916 (1959); or (2) the intervening act of negligence, *i. e.*, failure to maintain and service the bus frequently and properly, was one which was foreseeable by the defendant. *Clendenon v. Yarbrough*, 233 Ala. 269, 171 So. 277, 278 (1936); *Union Pacific v. Jarrett*, 381 F.2d 597 (9th Cir. 1967). Although defense counsel objected to these last two instructions at the time the court charged the jury, no specific grounds were assigned and General Motors has not urged the giving of these instructions as constituting grounds for a cross-appeal here. This Court will therefore examine the evidence on the issue of proximate cause in order to determine whether a jury question existed on any of the three theories outlined by the district court under which GM's negligence could be found to be sufficiently causally linked to the injury for the jury to find liability. If sufficient evidence existed to support a finding of liability on behalf of GM under any one of the above three approaches, the district court erred in granting the motion for judgment notwithstanding the verdict.

The evidence offered by the defense on the condition of the bus at the time it crashed was extensive and damaging to the plaintiffs' case. Testimony by the state trooper investigating the accident and by General Motors personnel who inspected the braking system afterwards established that most of the wheel cylinders were completely or partially frozen, and that most of the cylinder pistons on the rear brakes were leaking. The trooper testified that improper realignment of an anchor pin and brake shoe (presumably resulting from summer maintenance work on the bus) was probably the cause of increased friction and heat within the affected brake drum and likely caused excessive leakage of fluid from the transmission lines. He stated that in his opinion lack of sufficiently frequent maintenance had been the cause of the failure to detect the loss of brake fluid and the resulting accident.

To counter this evidence, plaintiffs elicited testimony from their expert witnesses tending to establish that had the braking system on the bus been a dual rather than a single hydraulic system, the chances of leakage developing in both reservoirs simultaneously would have been quite significantly lower, and hence the presence of the additional fluid reservoir servicing two of the brake cylinders independently of the other two would probably have prevented this accident. More importantly, however, the plaintiffs put on evidence relating to the brake servicing instructions in the 1969 GM Owner's Manual and Shop Mainte-

nance Manual from which this Court finds the jury could have concluded either that the Morgan County officials were not negligent in servicing the vehicle's braking system, or that if they were, such negligence was foreseeable by GM and hence the defendant could still be held liable.

Plaintiffs introduced into evidence copies of the 1965 GM owner's and shop maintenance manuals, both of which stated the fluid in the brake fluid reservoir should be checked every 6,000 miles. In addition, the owner's manual stated that "[t]he Chevrolet braking system requires very little care. The braking system should be checked occasionally for indications of fluid leaks. If leaks are found necessary repairs should be made at once. Keep the brakes properly adjusted, check all vacuum hose connections for leaks." The 1965 truck shop manual contained only the following additional warning: "Sustained heavy duty and high speed operation, or operation under adverse conditions may require more frequent servicing."

Plaintiffs alleged, and sought to prove, that these statements in the manuals were inadequate and grossly misleading in that checking the brake fluid level on a school bus every 6,000 miles would mean inspecting it only once a year, whereas GM engineers who testified at trial admitted that it would be necessary to check the fluid level on a school bus several times a month ·in order to conform with good maintenance practices. Plaintiffs' experts, Professor Koenig and Dr. Ball, testified that in their opinions the manuals were misleading and inaccurate with respect to the frequency of servicing which should have been stated as required for school bus operations. GM's Field Maintenance Supervisor also testified that the fluid level on a school bus should be checked once a week, but insisted that at yearly seminars held by him and attended by school bus maintenance personnel, (including some from Morgan County) verbal instructions were given that school bus braking systems required at least weekly checks of the level of the brake fluid. Such supplemental verbal instructions, it was urged, were certainly sufficient to cure any deficiency in the written ones in the manuals.

Given the existence of all this conflicting evidence bearing on the issue of the adequacy of the warnings in the two GM manuals that came with the bus chassis purchased by Morgan County in 1964, this Court is of the opinion that sufficient evidence was adduced at trial to create a jury issue on the negligence *vel non* of the Morgan County officials and whether such negligence, if it occurred, was foreseeable by GM. With respect to the possibility of intervening negligence in the form of the bus driver's failure to notice operational signs indicating possible loss of brake fluid, we note that the driver denied noticing either any signs of leakage or the gradual development of any significant "give" in his brake pedal prior to the accident, thus creating a jury question on this issue also.

From the above analysis, then, it appears that there was ample evidence introduced at trial under the *Boeing Co. v. Shipman* test to warrant submitting the issue of proximate cause to the jury. Since we have already determined that there was sufficient evidence to go to the jury on the breach of duty issue, it follows that the plaintiffs put on the kind and quantity of evidence which this Court had held is required to withstand a defense motion for judgment n. o. v., and the district court's grant of that motion by GM ·must therefore be reversed.

## II. THE ALTERNATIVE ORDER GRANTING THE MOTION FOR NEW TRIAL.

We now turn to a consideration of the propriety of the district court's alternative grant of a new trial on the ground that the evidence was insufficient to support the jury verdict. We think it critical that the case law on this point be read against the background of the Seventh Amendment, which provides that

"[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S.Const. Amend. VII.

While this constitutional provision obviously cannot be applied so as to foreclose any scrutiny of a jury's fact-findings, it expresses in clear terms the principle that facts once found by a jury in the context of a civil trial are not to be reweighed and a new trial granted lightly.

[11] The general rule, as uniformly stated by the commentators and applied by the courts, is that a district court's grant of a new trial is within the discretion of the court, and is ordinarily nonreviewable save for an abuse of that discretion. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *see generally* 6A Moore's Federal Practice, ¶ 59.08[5]. Several jurisdictions, however, have carefully distinguished the situation where the trial court has granted a new trial on the grounds of insufficiency of the evidence, since by so doing the court is in a sense intruding upon the jury's function and affecting a litigant's Seventh Amendment rights. Appellate courts in these jurisdictions are more exacting in reviewing such a new trial grant. *See, e. g, Lind v. Schenley Industries, Inc.*, 278 F.2d 79 (3d Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960); *Cities Service Oil Co. v. Launey*, 403 F.2d 537 (5th Cir. 1968); *Duncan v. Duncan*, 377 F.2d 49, 52–55 (6th Cir.), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967); *Fireman's Fund Ins. Co. v. AALCO Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

■■■■ The standard adopted by this Court is that the district court should not grant a new trial motion unless the jury verdict is "at least . . . against the *great* weight of the evidence." *Cities Service Oil Co. v. Launey, supra*, at 540 (emphasis in the original). A rule which would permit a court to grant a new trial when the verdict was merely against the "greater weight" of the evidence, this Court said, "would destroy the role of the jury as the principal trier of the facts, and would enable the trial judge to disregard the jury's verdict at will." *Id.*

Applying the test enunciated in *Cities Service*, we conclude after careful examination of the record, that the district court erred in granting a new trial in the alternative. Without reiterating in detail any of the evidence previously discussed, it should be clear from the preceding section of this opinion that the evidence was at most conflicting on the issues of negligent design and proximate cause. In such a situation, as the Supreme Court has stated,

"[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).

■■■■ Factors this Court has previously considered in reviewing a district court's alternative grant of a new trial include, among others, the simplicity or complexity of the issues, the degree to which the evidence presented was in dispute, and whether any "undesirable or pernicious element" occurred or was introduced into the trial. *O'Neil v. W. R. Grace & Co.*, 410 F.2d 908, 913, 915 (5th Cir. 1969). Examining this case in light of those factors, we find that both the issue as to the reasonable safety of the single hydraulic braking system without an emergency brake backup, and the issue as to the "state of the art" in the automotive industry in 1964 were sufficiently simple so as not to form a basis for granting a new trial. Juries are constantly being called upon to pass upon

negligent design issues in the products liability area, and the sometimes confusing amount and type of technical testimony that was elicited on the design issue at the trial of this case should not as a matter of law have precluded the jury that heard the case from being able fully to comprehend and assess the basic safety and technological feasibility issues involved.

Furthermore, there have been no allegations that the case was improperly tried, or that counsel on either side made prejudicial statements; this appeal has been argued, by counsel for both parties, solely on the issue of the sufficiency of the evidence to support the jury verdict. Finally, the fact that the evidence, as we have observed, was conflicting on certain elements of appellants' case, is not enough in itself to justify the district court's decision to grant a new trial. *Tennant v. Peoria & Pekin Union Ry. Co., supra.*

As stated before, we have studied the record carefully and have concluded that the jury verdict here was not against the "*great* weight of the evidence," as required in this Circuit in order to justify a grant of a new trial. The judgment of the district court granting appellee General Motors judgment notwithstanding the verdict is therefore reversed, the alternative grant of a new trial is also reversed, and the district court is hereby directed to enter judgment on the verdict for plaintiffs-appellants.