William Brian PROCTOR, a minor 2 years of age, who sues by his next friend and father, William H. Proctor, Plaintiff,

v.

UNITED STATES of America, Defendant.

William H. PROCTOR, as father of William Brian Proctor, a minor, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 77–G–0228–S and 77–G–0229–S

United States District Court, N. D. Alabama, S. D.

Oct. 31, 1977.

Leon Ashford and Ray O. Noojin, Noojin, Haley & Ashford, Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U.S. Atty., Ann Robertson, Henry Frohsin, Asst. U.S. Attys., Birmingham, Ala., for defendant.

## FINDINGS OF FACT

GUIN, District Judge.

1. Plaintiff William Brian Proctor is a citizen and resident of Jefferson County, Alabama, and on April 21, 1976, was approximately 22 months old.

2. Plaintiff William H. Proctor is the father of William Brian Proctor, his next of friend, and also is a citizen and resident of Jefferson County, Alabama.

3. On April 21, 1976, Mr. Joe Ed Hocutt was working as a rural route mail carrier for the United States Postal Service. At approximately 1:10 P.M. he was delivering mail on Scenic Drive in Trussville, Alabama, in his personally owned right-hand drive 1967 International Scout. As Hocutt approached 501 Scenic Drive, the Gipson residence, he noticed several children playing in the upper part of the Gipsons' yard. Brian Proctor was not among those children. Hocutt stopped at the Gipsons' residence and found money for stamps and several unstamped letters in the mailbox. As he was stamping the envelopes, Cathy Gipson approached Hocutt's vehicle to receive the mail for her family. Hocutt did not leave his vehicle or turn off its motor during his stop at the Gipsons' residence.

4. Sometime before or during Mr. Hocutt's arrival at the Gipsons' residence on Scenic Drive, Jan Proctor, Brian's mother, returned from Western Supermarket and backed her automobile down her driveway (her basement/garage was at the bottom of a steep incline) which was across the street from the Gipsons' home. Jan Gipson (a neighbor and Cathy Gipson's sister) and Brian were with Jan Proctor. When Jan Proctor was parked, she got out on the driver's side of her automobile, followed by young Brian. Jan Proctor went into her basement to dry clothes. Brian remained outside, alone and unattended. At the same time, Jan Gipson exited the Proctors' automobile and went home. Neither Jan Proctor nor anyone else was to see Brian until after the accident.

5. When Hocutt completed his postal business with Cathy Gipson, Hocutt prepar-

ed to continue on his rural route. He checked his interior rear-view mirror, his left-hand outside mirror, his right-hand outside mirror, and looked over his shoulder. Finally, Hocutt observed his line of travel in front of his vehicle and, seeing nothing, began to slowly move forward. All the young people that Hocutt had seen that day on Scenic Drive were out of his line of travel.

6. Cathy Gipson was standing next to her mailbox in her yard, and before Hocutt moved his vehicle Cathy, too, observed the area in front of the Scout, including the area to the right of her yard. She saw nothing. Cathy also observed Hocutt checking the area before moving.

7. Hocutt had moved forward approximately the length of his vehicle when Cathy heard a bump or thump, looked down and saw Brian Proctor on the road. She screamed. Hocutt heard the sliding of gravel and Cathy's scream and stopped immediately. He got out of his vehicle and discovered Brian on the pavement with the upper one-third of his body under Hocutt's vehicle. Brian's head was some 12 to 21 inches from the right rear tire.

8. As soon as Hocutt realized the child had been injured, Hocutt administered first aid as a preliminary measure and then called the Trussville police and an ambulance which took Brian to East End Memorial Hospital.

9. When the police arrived, one of them, Sergeant Ray, examined the entire vehicle. Although the vehicle was extremely dusty, Ray found no marks or smudges that would have indicated the vehicle had come in contact with the child. No hair or blood was discovered on the vehicle. Ray and Hocutt examined Brian before he was taken to the hospital and found no tire marks or dust on his clothes or body.

10. No one saw Brian Proctor subsequent to his exit from his mother's vehicle. It cannot be determined how Brian got in the position of peril or where he was immediately prior to the accident. There were no eyewitnesses to the accident. There was no physical evidence on Hocutt's vehicle which indicated that the vehicle and child had come into contact. There were no tire marks on the child. The positioning of Brian's body in juxtaposition to the vehicle after the accident does not aid the court in ascertaining where the child was immediately prior to the accident.

11. Plaintiff has not established by a preponderance or greater weight of the evidence that the United States or its agent Hocutt were guilty of negligence under either the common law or statutory law of Alabama, since the court finds that there is no evidence establishing how, when, or where Hocutt could by the exercise of due care have discovered young Brian Proctor's peril but negligently failed to do so.

12. The child sustained a head injury in the accident, but since the court concludes that there was no negligence on the part of the United States or its agent Hocutt, it is unnecessary to detail the exact extent of the injury.

### CONCLUSIONS OF LAW

This court has jurisdiction of this matter under 28 U.S.C. Section 1346(b), since it is brought under the provisions of the Federal Tort Claims Act, 28 U.S.C. Section 2679(b).

In order for plaintiff to recover it is necessary to show that defendant or defendant's agent Hocutt was guilty of an act of negligence which was a proximate cause of the collision between plaintiff and the vehicle and the consequences that resulted therefrom. *Spurlin v. General Motors*, 528 F.2d 612 (5th Cir. 1976). The court is aware of the Alabama rule that a child under seven years of age cannot be guilty of contributory negligence. *Jones v. Strickland*, 201 Ala. 138, 77 So. 562 (1917).

In Alabama, a statute requires that ". . . every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway . . . and shall exercise proper precaution upon observing any child . . . upon a roadway." Title 36, Section 58(17), Code of Alabama 1940 (Recompiled 1958).

■ Under case law in Alabama, a driver who knows he is driving in a zone where children are likely to be on the roadway or in a dangerous proximity thereto, is subject to a duty of care to observe due caution to conserve safety of such children. *Howell v. Roueche*, 263 Ala. 83, 81 So.2d 297 (1955). However, it is also the law of Alabama that the drivers of motor vehicles are not insurers against all accidents wherein children are injured, and a driver proceeding along a street or highway in a lawful manner, using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not be reasonably foreseen. *Howell, supra.*

■ As a corollary to the foregoing, it is a well-recognized principle that absent knowledge, the driver of a motor vehicle is not required to get out of his vehicle and make a search for children who may be under, alongside, in front of, or in the rear of the vehicle.

■ The problem in this case is that no one saw young Brian Proctor before the accident or knows where he was or how he got into his position of peril. Testimony established that Hocutt checked in all directions before moving his vehicle. Cathy Gipson and Hocutt both testified that Hocutt looked and checked his mirrors and the area in front of the vehicle. Cathy Gipson, who was standing outside the vehicle, checked and did not see Brian in front of Hocutt's vehicle. There is *no* evidence to support a finding that Brian Proctor's perilous position could have been detected by any reasonable, prudent driver exercising care commensurate with the circumstances.

■ Plaintiff maintained at trial that since Hocutt, a *rural route carrier*, knew of the existence of a convex mirror (pot-lid mirror) which could be placed on the front of a vehicle to give a view of a portion of the front bumper of his vehicle, Hocutt should be held to a higher standard of care, and the absence of such a mirror was a breach of such a standard. Plaintiff cited no law for the proposition and the court knows of no such law.

Plaintiff adduced no evidence at trial that there is any federal, state or local law requiring the placement of such a mirror on a privately-owned vehicle of a rural route carrier, or on any vehicle owned by a citizen of Alabama. The court knows of no such law, and therefore concludes there is none. The court notes that Title 28 U.S.C. § 1346(b) provides that the government will be liable for personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Since there is no law or duty in Alabama requiring a citizen to have such a mirror, there was no duty for Hocutt to have such a mirror.

Further, since there is no evidence that Brian Proctor was in front of Hocutt's vehicle immediately before the accident, it cannot be said that had the convex mirror been in place the child would have been discovered in a perilous position.

■ The court cannot rest its verdict on pure speculation and conjecture. The burden is upon the plaintiff to establish negligence together with proximate cause by affirmative proof, and negligence will not be inferred by the mere showing of an accident resulting in personal injury. The plaintiff has been unable to meet this burden. Since there has been no proof of negligence on the part of defendant's rural mail carrier, there may be no recovery against the defendant.

An appropriate order consistent herewith will be entered.