James DAWSON, Plaintiff,

v.

WAL–MART STORES, INC., Defendant.

No. DC88–204–S–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Jan. 13, 1992.

M. Lee Graves, Clarksdale, Miss., for plaintiff.

W.O. Luckett, Clarksdale, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

This action involved allegations that plaintiff, a black male, while a customer in defendant's store, suffered a back injury when a display chair in which he was sitting collapsed. At the close of all the evidence, plaintiff moved for a directed verdict on the theory of strict liability, and this court sustained plaintiff's request for a peremptory instruction on defendant's liability for selling a product in a defective

condition unreasonably dangerous. The only issue presented for the jury's consideration was the amount of damages, if any, suffered by plaintiff and caused by the defective chair. The jury (admittedly all-white) found for defendant and awarded plaintiff nothing. This cause is presently before the court on two motions filed by plaintiff. The first challenges this court's compliance with 28 U.S.C. § 1867; the second requests a judgment notwithstanding the verdict or, in the alternative, a new trial on the issue of damages.

## FACTS

In this case, plaintiff requested and was granted, over defendant's objection, a venire composed of persons from the Delta Division. Approximately two weeks before the scheduled trial of this matter, this court furnished plaintiff's counsel with a proposed jury list which consisted of seventy-five individuals, twenty-five of whom were black. Thereafter, eight were excused; of this number, five were black. On the day of trial, twenty-two individuals were drawn from this list to compose the venire; only three were black, and one of these was excused before coming to court that morning. The reason used to excuse these persons was "mainly" for hardship transportation reasons.[1]

A review of the transcript of the voir dire indicates the following: (1) Plaintiff's counsel did not move to stay the proceedings for substantial failure to comply with the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq.; (2) plaintiff's counsel challenged no jurors for cause; (3) plaintiff's counsel did not object to defense counsel's peremptory challenge of one of the remaining black jurors.

## DISCUSSION

### I. 28 U.S.C. § 1867

■ 28 U.S.C. § 1867(c) states:

In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have dis-

1. The above statements were taken from plaintiff's counsel's affidavit which was submitted

after inspecting the jury selection records in this case as allowed by order of this court.

covered, by the exercise of diligence, the grounds thereof, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

Other subsections establish identical deadlines in the context of criminal cases. *See* 28 U.S.C. § 1867(a) and (b).

Each of the subsections of § 1867 has been interpreted as precluding any statutory challenge to irregularities in juror selection that is not made before voir dire:

> [T]he critical point for determining the timeliness of statutory challenges to jury selection procedures is the voir dire examination. One who fails to assert challenges before or during voir dire is foreclosed from later tardy actions which attack the validity of the jury plan.

*United States v. De Alba–Conrado*, 481 F.2d 1266, 1269 (5th Cir.1973). *See also McGinnis v. M.I. Harris, Inc.*, 486 F.Supp. 750, 754 (N.D.Tex.1980) (Higginbotham, J.) (specifically interpreting § 1867(c) and quoting *De Alba–Conrado* ). Further,

> that the statute does not contemplate the granting of a new trial for a violation of the Act could not be clearer, since the only remedy provided is a stay in the proceedings until a jury can be selected in conformity with the statute. This Circuit has underscored that plain meaning of the statute by noting that a claim of "substantial failure to comply" with the Act is inappropriate for post-trial motions.

*Arbuckle Broadcasters, Inc. v. Rockwell International Corp.*, 513 F.Supp. 407, 410 (N.D.Tex.1980) (citing *United States v. Hawkins*, 566 F.2d 1006 (5th Cir.), *cert.*

denied, 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978)).

In this case, a statutory challenge was made to the jury selection procedures of this district only *after* the chosen panel rendered a verdict adverse to plaintiff. This is clearly untimely and thus is foreclosed.[2]

■ The forfeiture of the statutory claim, however, does not affect the right of a party to assert a constitutional challenge to the selection procedure. *McGinnis*, 486 F.Supp. at 754. During the voir dire in this case, plaintiff did not make a constitutional challenge to the composition of the venire. Likewise, he has not now explicitly raised such a challenge, nor has he argued the existence of the three essential elements necessary to establish a prima facie violation of the right to a "fair cross section procedure," *id.* at 756, i.e., one which provides for the drawing of a petit jury from a "source fairly representative of the community. . . ." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975). *See Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) (to establish prima facie constitutional violation of fair cross-section requirement, party must show: group allegedly excluded is distinctive group in community; representation of this group in venires from which juries are selected is not fair and reasonable in relation to number of such persons in community; and underrepresentation is due to systematic exclusion of group in jury selection process).

■ Assuming arguendo, however, that plaintiff has implicitly presented a constitu-

---

**2.** Because plaintiff's statutory challenge is untimely, the court need not address its merits. The court notes three important facts, however. First, the excuse of any prospective juror for undue hardship is allowed in the discretion of the court or the clerk of the court. *See* 1989 Amendment to Plan of the United States District Court for the Northern District of Mississippi, All Divisions, for the Random Selection of Grand and Petit Jurors, No. WM 73–28 (N.D.Miss. Mar. 6, 1989); *see also* 28 U.S.C. § 1866(c). Second, the Fifth Circuit has recently found the jury selection process of the Northern District of Mississippi to comply with the

statutory guidelines. *United States v. Givhan*, CRE–90–034–S (5th Cir. May 31, 1991) (unpublished opinion). And finally, as indicated previously, two weeks before trial plaintiff's counsel was furnished with a proposed jury list, giving rise at that time or within seven days thereafter the opportunity to voice objections to the manner in which the venire was selected. *See McGinnis*, 486 F.Supp. at 754 (if party challenging statutory procedures discovered, or in exercise of diligence could have discovered, grounds for challenge earlier than voir dire, challenge must be made within seven days of that earlier date).

tional attack on the jury selection procedures in this district and that the attack is properly and timely before the court, it also must fail. As *McGinnis* teaches: "To overcome a verdict of a jury whose membership has been accepted by one's lawyer without a murmur of protest when the trial was fair in other respects, requires that a citizen prove he has been deprived of his constitutional jury rights." *McGinnis,* 486 F.Supp. at 759. This has not been done in this case. *See Timmel v. Phillips,* 799 F.2d 1083, 1086–87 (5th Cir.1986) ("Merely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case"; "[o]ne incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion"); *McGinnis,* 486 F.Supp. at 758 ("As the second and third essential elements in the prima facie case, the challenging party would have to show that the *procedure* used for selection of jurors both generally and in his particular case is such that representation of 'distinctive' groups in juries would not be fair and reasonable in relation to the number of such persons in the community") (emphasis in original).

■ Plaintiff has presented two other claims in this motion which, although not directly tied to § 1867, do warrant attention. The first involves the challenge by defense counsel to the sole black who was within plaintiff's reach after the seating of the panel. The second centers around the trial of this case in Oxford, Mississippi, rather than in Clarksdale, Mississippi.

At the time the instant action was tried, the Fifth Circuit operated under the holding that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), did not apply in civil trials. *Edmonson v. Leesville Concrete Co.,* 895 F.2d 218 (5th Cir. 1990) (en banc). It was this *en banc* opinion which the United States Supreme Court later reversed. In *Edmonson v. Leesville Concrete Co.,* 500 U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court found that, in the context of a civil case, the use of peremptory challenges based on race violates the Fifth Amendment. The *Edmonson* Court found that the applicable guidelines for determining whether a civil litigant has established a prima facie case of racial discrimination are those enumerated in *Batson. Edmonson,* 500 U.S. at ——, 111 S.Ct. at 2088, 114 L.Ed.2d at 680.

In this case, plaintiff did not object at voir dire to any of defense counsel's peremptory challenges. Certainly, if he had objected, this court would have been foreclosed from allowing a *Batson* challenge because of the *en banc Edmonson* decision then governing this court's proceedings, but the objection would have been preserved nonetheless. The Fifth Circuit has clearly held that a *Batson* challenge which is made in hindsight and not until long after the unselected venirepersons have been released is not reviewable. *United States v. Masat,* 948 F.2d 923, 927 (5th Cir.1991).

■ Finally, plaintiff alleges that trying this case in Oxford rather than Clarksdale contributed to the hardship transportation problems of some of the excused jurors. It was plaintiff himself who requested and received, over defendant's objection, a so-called "Delta jury," i.e., a jury composed of persons from the Delta Division of this district.[3] However, plaintiff, having received advance notice that trial would be held in Oxford, never objected to this setting until after the jury reached its verdict, nor did he make a motion to transfer this cause.[4]

## II. Motion for JNOV or New Trial

Plaintiff has also moved for a judgment notwithstanding the verdict or, alternative-

---

**3.** There is a preconception among many attorneys in this district that a Delta jury is more likely to return a judgment in favor of a plaintiff and for a larger sum than juries from other divisions. *See Parham v. Allied Products Corp.,* No. DC89–69–S–O (N.D.Miss. June 25, 1990) (unpublished opinion and order transferring cause from Delta Division to Eastern Division for convenience of witnesses; new number fol-

lowing transfer: EC90–162–S–O); *First National Bank v. Honda Motor Co.,* No. DC89–3–S–O (N.D.Miss. July 12, 1989) (same; new number following transfer: EC89–196–S–O).

**4.** 28 U.S.C. § 1393, which dealt with divisional venue in civil cases, was repealed in 1988.

**1170**

ly, a new trial on the issue of damages. As grounds for the JNOV request, plaintiff alleges that (1) three members of the final jury panel exhibited a close relationship with defense counsel and (2) the evidence was uncontradicted that plaintiff was injured when the chair collapsed with him. Plaintiff's alternative request for a new trial is based on the following: (1) Liability was uncontradicted and stipulated; (2) the verdict was against the great weight of the evidence; (3) the jury panel was tainted; (4) the jury exhibited passion and prejudice; (5) the verdict was completely and patently inadequate based on the proof; (6) a directed verdict should have been given on the theory of breach of implied warranty so that the jury would have been required to return damages; and (7) the exclusion of non-white jurors violated 28 U.S.C. § 1867.[5]

**A.**

■ The applicable standard for ruling on a JNOV motion in all civil cases in this circuit is that provided in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc):

> Under the standard established in *Boeing*, a motion ... for judgment n.o.v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence ... but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied.... A mere scintilla of evidence is insufficient to present a question for the jury. A motion for ... judgment n.o.v. should not be decided by which side has the better of the case, nor should the motion be granted only when there is a complete absence of probative facts to support a

jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of fact, and not the court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.

*Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1371 (5th Cir.1982) (en banc) (citing *Boeing* ).

■ The court is of the opinion that based on this well established standard and the evidence adduced at trial, the motion for JNOV is not well taken and should be denied. Despite plaintiff's assertion to the contrary, considerable evidence was presented by both parties about which "reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions...." *Maxey*, 665 F.2d at 1371.

■ Plaintiff argues, though not in this section of his motion, that the court should have directed a verdict on the issue of damages based on a breach of implied warranty or on a theory of strict liability. As the Mississippi Supreme Court has recognized, "Whether [plaintiff'] action sounds in warranty or in tort, [he] must still prove that the defect in the product caused the damage of which [he] complained." *Crocker v. Sears, Roebuck & Co.*, 346 So.2d 921, 923 (Miss.1977). Although the court found that defendant was liable for any damages suffered by plaintiff that were proximately caused or proximately contributed to by the defective condition of the chair, this finding did not end the matter, for it was still plaintiff's burden to prove by a preponderance of the evidence that his damages were causally connected to the defective chair. The court was, and still is, of the opinion that a directed verdict was inappropriate on that issue. There was certainly sufficient evidence on this issue about which reasonable minds could differ, and, as will be explored in greater detail in the next section of this opinion, the jury was warranted in determining that plaintiff had not filled this missing link.

---

5. This final basis will not be considered anew.

*See supra* section I of this opinion.

## B.

 The Seventh Amendment of the United States Constitution "expresses in clear terms the principle that facts once found by a jury in the context of a civil trial are not to be reweighed and a new trial granted lightly." *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976). A jury's factual findings are thus accorded great deference, and all reasonable efforts should be made to uphold the verdict. *Evans v. H.C. Watkins Memorial Hospital, Inc.*, 778 F.2d 1021, 1022 (5th Cir.1985). A district court should not grant a motion for a new trial unless the jury verdict is at least against the great weight of the evidence. *Spurlin*, 528 F.2d at 620. As *Spurlin* recognizes:

> A rule which would permit a court to grant a new trial when the verdict was merely against the "greater weight" of the evidence ... "would destroy the role of the jury as the principal trier of the facts, and would enable the trial judge to disregard the jury's verdict at will."

*Id.* (citations omitted). "Factors militating against new trials in such cases are simplicity of the issues, the degree to which the evidence was in dispute, and the absence of any pernicious or undesirable occurrence at trial." *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir.1980) (citation omitted). The fact that the evidence was conflicting on certain points is not sufficient in itself to justify the granting of a new trial, *Spurlin*, 528 F.2d at 621, for " '[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' " *Id.* at 620 (quoting *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944)).

In this case, the issue for the jury was quite simple: Did plaintiff prove by a preponderance of the evidence that the defective condition of the subject chair proximately caused or proximately contributed to plaintiff's injuries, and if so, what was the amount of his damages? There were certainly no pernicious or undesirable occurrences during the course of the trial. Although there was indeed conflicting testimony regarding plaintiff's damages,[6] this is insufficient alone to grant a new trial. The following language seems appropriate:

> Given a jury's undoubted power to sift the evidence before it and to believe or disbelieve portions of the testimony of various witnesses (or even of the same witness) in constructing its own view of what most probably happened, this jury could have reached a number of different conclusions, all of which would have sufficient support in this evidence to be upheld. On this record, the jury's conclusions are at least as likely to be true as any others ... and are not against any great evidentiary weight.

*Conway*, 610 F.2d at 367.

 Finally, plaintiff asserts that the jury panel in this case was tainted by the presence of three jurors who allegedly had a close relationship with defense counsel. Each of these jurors was thoroughly questioned by the court; the transcript of the proceedings reveals the following:

(1) Linda Smith informed the court that defense counsel's firm had represented her in a matter concerning her ex-husband approximately five years ago. She stated that she had not used that firm in any other legal matter since then and that her prior relationship with the firm would not influence her in any way.

(2) In response to further questions by the court, Murry Riales reported that he and defense counsel were in the same National Guard unit approximately twenty years ago. Mr. Riales denied that he and counsel were friends or that their past association might tend to influence

---

**6.** It was certainly uncontradicted that plaintiff went to the doctor the day after this accident, that he was hospitalized, underwent back surgery, and incurred other medical bills, and that he missed work during this time and did not return to his old job. However, testimony was elicited that plaintiff had a pre-existing, degenerative spinal condition, that plaintiff's doctor had released him to return to work, and that plaintiff successfully changed a tire only 14 days before the taking of his deposition at which he could barely bend over.

him in some way. He explained that he and counsel had not been in contact during the interim years.

(3) After voir dire, Helen Griffin approached the bench and informed the court that a member of defense counsel's firm had been involved in a personal injury case in which she had been a party. Ms. Griffin was unsure whether the action was still pending, but defense counsel insisted that the matter had been settled between the parties.[7] Ms. Griffin stated that this would not cause her to disfavor counsel or his client.

Plaintiff's counsel did not challenge any of these persons for cause, nor did he use any of his peremptory challenges against them. He was given a fair and adequate opportunity to question Smith, Riales, and Griffin and to remove them from the venire. He did not do so but rather exercised his challenges on others. Counsel cannot now complain in hindsight of tactical decisions made with full knowledge of the facts.

## CONCLUSION

Dissatisfaction with the verdict is understandable. But the plain fact remains that the benefit of hindsight cannot overcome duties imposed by the statute or defeat a verdict rendered by a fair and impartial jury and supported by the evidence and the standards by which that evidence must be considered.

---

**7.** Plaintiff submitted the affidavit of Ms. Griffin's personal attorney who stated that two lawsuits were filed as a result of the automobile accident involving his client. It appears that a member of defense counsel's firm participated in only one of these, that being the one that was settled. The other suit was apparently ongoing at the time of voir dire in the instant case, but there is no indication in this affidavit that defense counsel or any other member of his firm represented anyone in the second action.