United States Court of Appeals,

Fifth Circuit.

No. 92–7077.

James DAWSON, Plaintiff–Appellant,

v.

WAL–MART STORES, INC., Et. Al., Defendants–Appellees.

Nov. 27, 1992.

Appeal from the United States District Court for the Northern District of Mississippi.

Before JONES, BARKSDALE, Circuit Judges, and JUSTICE,[1] District Judge.

JUSTICE, District Judge:

Plaintiff James Dawson, an African–American man, asserts that he suffered a back injury in the store of defendant Wal–Mart Stores, Inc. ["Wal–Mart"] when a rattan display chair in which he was sitting collapsed. At trial, the district court sustained Dawson's request for a peremptory instruction regarding Wal–Mart's liability for selling a product in a defective condition, unreasonably dangerous for its intended use. The only issue submitted to the jury was the amount of damages, if any, suffered by the plaintiff and caused by the defective chair. The jury found for Wal–Mart. Dawson filed post-trial motions challenging the district court's compliance with the Jury Selection and Service Act, 28 U.S.C. § 1861, *et seq.,* and demanding judgment notwithstanding the verdict ("JNOV"), or, in the alternative, a new trial on the issue of damages. Both motions were denied by the district court. 781 F.Supp. 1166. Finding no reversible error, we affirm.

I. Dawson's Motion for JNOV or New Trial.

On January 6, 1988, plaintiff James Dawson, while shopping at Wal–Mart in Clarksdale, Mississippi, sat in a rattan rocker. As he seated himself, the chair fell apart and collapsed to the concrete floor. Dawson went to a physician the next day complaining of back pain. He was examined and released by the physician. Approximately a week after the accident, Dawson was hospitalized for back pain. Surgery was performed on his back approximately six months after the

---

[1]District judge of the Eastern District of Texas, sitting by designation.

incident. Dawson missed work during this time period and has not returned to the job he held at the time of the incident.

The neurosurgeon who treated Dawson, Jerry Engelberg, M.D., testified that the fall could have traumatized Dawson's spinal nerves and aggravated a preexisting condition of lumbar spinal stenosis. Dr. Engelberg could not state with a reasonable degree of medical certainty that the fall was the cause of Dawson's injury or the cause of an aggravation of a preexisting injury.[2] James Galyon, M.D., the medical expert called by Wal–Mart, reviewed Dawson's medical records and testified that Dawson had had episodes of back problems beginning in 1967. He further testified that the fall could not have produced the symptoms experienced by Dawson and noted by Dr. Engelberg at the time of the surgery. Dr. Galyon also stated that the symptoms were consistent with progressive degenerative changes which had taken place over a long period of time.

At Dawson's request, the district court instructed the jury that the defendant, Wal–Mart, offered for sale a chair which was in a defective condition and unreasonably dangerous to the user or consumer, and that when Dawson was invited to sit in it, the chair fell apart, causing Dawson to hit his back and neck. The court further instructed the jury that the verdict should be for the plaintiff, if the jury found from a preponderance of the evidence that the condition of the chair proximately caused or contributed to the plaintiff's injury. The jury returned a general verdict for Wal–Mart.

Dawson moved for JNOV[3] or, alternatively, for a new trial on the issue of damages. In support of the motions, Dawson argued that (1) the evidence was uncontradicted that Dawson was injured when the chair collapsed, and (2) the verdict was tainted because three members of the final jury panel exhibited a close relationship with defense counsel.

---

[2]A plaintiff bringing an action under theories of strict liability, breach of warranty, or negligence bears the burden of proving that the injury was proximately caused by the acts or omissions of the defendant. *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988). Plaintiff must prove to a reasonable degree of medical certainty that the injury was caused by the defendant's act. *Bernhardt v. Richardson–Merrell, Inc.,* 723 F.Supp. 1188, 1190–92 (N.D.Miss.1988), *aff'd,* 892 F.2d 440 (5th Cir.1990).

[3]Rule 50 of the Federal Rules of Civil Procedure, pertaining to motions for directed verdict and judgment notwithstanding the verdict, was amended, effective December 1, 1991. The new Rule 50 effected no change in the existing standard, but renamed the motion as one for judgment as a matter of law. Fed.R.Civ.P. 50(a) advisory committee's note (1991 amendment).

A. *The sufficiency of the evidence.*

A district court's ruling on a motion for new trial is reviewed for abuse of discretion. *Munn v. Algee,* 924 F.2d 568, 577 (5th Cir.), *cert. denied,* ––– U.S. ––––, 111 S.Ct. 277, 116 L.Ed.2d 229 (1991); *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 362 (5th Cir.1980) (citing *Spurlin v. General Motors Corp.,* 528 F.2d 612 (5th Cir.1976)). The abuse of discretion standard recognizes the deference that is due the trial court's first-hand experience of the witnesses, their demeanor, and the over-all context of the trial. *Conway,* 610 F.2d at 362.

The reviewing court gives somewhat greater deference when the district court has denied the new trial motion, *Munn,* 924 F.2d at 577; *Jones v. Wal–Mart Stores, Inc.,* 870 F.2d 982, 986 (5th Cir.1989), and left the jury's determinations undisturbed. *Conway,* 610 F.2d at 362 (citing *Valley View Cattle Co. v. Iowa Beef Processors,* 548 F.2d 1219 (5th Cir.), *cert. denied,* 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977)). New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence. *Id.* at 363.

In diversity cases such as this, even though state law determines the type of evidence that must be produced to support a verdict, the sufficiency or insufficiency of the evidence in relation to the verdict is governed by a federal standard. *Jones,* 870 F.2d at 986. The federal standard mandates that all the evidence must be viewed in a light most favorable to the jury's verdict, and that the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion. *Id.* at 987.

The issue for the jury in the present case was not one of damages, as Dawson alleges, but of causation—did Dawson prove by a preponderance of the evidence that the defective condition of the chair proximately caused or contributed to his injuries? Only if this question was answered in the affirmative would the jury need to reach the issue of damages. Both parties submitted evidence on the issue of causation, and, after weighing the conflicting evidence and making credibility determinations, the jury found for Wal–Mart.[4] The fact that there was conflicting testimony regarding

---

[4]In support of his argument that a new trial on the issue of damages should have been granted, Dawson cites numerous cases where the jury found for the plaintiff but awarded inadequate damages or no damages at all. *See, e.g., Evans v. H.C. Watkins Memorial Hospital, Inc.,* 778

causation and damages is not grounds for granting a new trial. *Conway,* 610 F.2d at 367. Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld.

B. *The Integrity of the Jury Panel.*

Dawson asserts that three members of the jury panel had a close relationship with defense counsel and were therefore unable to render an impartial verdict. However, Dawson's counsel did not challenge any of the three persons for cause, nor did he use any of his peremptory challenges to strike them. The trial transcript reveals that Dawson was given a fair opportunity to question each juror on voir dire and to remove them from the venire, but that he chose to exercise his challenges on others. When the basis for challenge to a juror is timely shown, the failure to object constitutes a waiver of the right to attack the composition of the jury. *See United States v. Reis,* 788 F.2d 54, 59 (1st Cir.1986); *United States v. Diaz–Albertini,* 772 F.2d 654, 657 (10th Cir.1985), *cert. denied,* 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987).

We conclude that the verdict for the defendant, Wal–Mart, was supported by the evidence and that the district court was correct in denying plaintiff's motion for JNOV or new trial.

II. Dawson's Challenge to the Jury Selection.

Dawson's request for a venire composed of persons from the Delta Division of the Northern District of Mississippi was granted by the district court. Approximately two weeks before the trial, the court furnished counsel with a proposed jury list consisting of seventy-five individuals. Twenty-five persons listed were black. Twenty-two persons were drawn from the list on the day of trial to compose the venire. Only three of the persons chosen for the venire were black, and one of the three was excused before coming to court that morning. Persons who were excused were let go in large part for reasons relating to the hardship of transportation, *i.e.,* the persons selected from the Delta Division were required to travel to Oxford, Mississippi, which is in the Western Division, for

---

F.2d 1021 (5th Cir.1985); *McKinzie v. Fleming,* 588 F.2d 165 (5th Cir.1979); *Givens v. Lederle,* 556 F.2d 1341 (5th Cir.1977); *Burlingame v. Southwest Drug Stores of Miss., Inc.,* 203 So.2d 74 (Miss.1967). These cases are inapposite where the jury found for the *defendant,* as they did in the present case.

trial.

In a post-trial motion, Dawson challenged compliance with jury selection procedures under the Jury Selection and Service Act, 28 U.S.C. § 1861, *et seq.,* alleging that the selection of the jury was tainted by racial and economic discrimination. Dawson did not move to stay the proceedings for failure to comply with the Act before or during voir dire. Dawson did not challenge any jurors for cause, nor did he object to defense counsel's peremptory challenge of one of the remaining black jurors.

28 U.S.C. § 1867(c) provides:

> In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds thereof, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

This court has held that section 1867 precludes any statutory challenges to irregularities in jury selection that are not made before voir dire. *United States v. De Alba–Conrado,* 481 F.2d 1266, 1269 (5th Cir.1973). Moreover, the statute does not contemplate that a new trial could be granted for a violation of the Act, "since the only remedy provided is a stay in the proceedings until a jury can be selected in conformity with the statute." *Arbuckle Broadcasters, Inc. v. Rockwell International Corp.,* 513 F.Supp. 407, 410 (N.D.Tex.1980). Thus, Dawson's post-trial statutory challenge to the jury selection procedure is foreclosed.

However, "forfeiture of the statutory claim in no way affects the sanctity of a defendant's due process right to be tried by a jury drawn from a fair cross section of the community." *McGinnis v. M.I. Harris, Inc.,* 486 F.Supp. 750, 755 (N.D.Tex.1980) (citing *United States v. Kennedy,* 548 F.2d 608, 613–14 (5th Cir.), *cert. denied,* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977)). The use of peremptory challenges to exclude prospective jurors because of race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This principle applies to civil cases as well as criminal. *Edmonson v. Leesville Concrete Co., Inc.,* —— U.S. ——, ——, 111 S.Ct. 2077, 2087, 114 L.Ed.2d 660 (1991).[5]

---

[5]The District Court noted that, at the time of trial, the Fifth Circuit operated under the holding that *Batson* did not apply in civil trials. *Edmonson v. Leesville Concrete Co.,* 895 F.2d 218 (5th

Constitutional objections to the seating of a jury must be made promptly. *United States v. Erwin,* 793 F.2d 656, 667 (5th Cir.), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). Dawson did not raise a constitutional challenge to the jury selection procedure in his motion for new trial or his appellate briefs; nor did he object to the composition of the jury panel at trial. Even if Dawson had raised this issue before the district court in his motion for new trial and had asserted it on appeal, a post-trial challenge to the composition of the jury is untimely and therefore barred. *Munn v. Algee,* 730 F.Supp. 21, 29 (N.D.Miss.1990), *affirmed,* 924 F.2d 568 (5th Cir.1991). *See Erwin,* 793 F.2d at 667 (*Batson* challenges should be made before the unselected veniremen are released).

Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.

---

Cir.1990) (en banc). The United States Supreme Court reversed this decision after trial in the present case, but before the District Court rendered its opinion and order on Dawson's post-trial motions. ⸺ U.S. ⸺, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). We need not reach the issue of whether the Supreme Court's decision in *Edmonson* should be retroactively applied to the case on appeal, because, as discussed below, we find that Dawson's failure at trial to raise a constitutional challenge to the jury selection procedure bars any challenge on appeal.