NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1172
_____

CAROL TOKASH,

Appellant

v.

FOXCO INSURANCE MANAGEMENT
SERVICES, INC.; EXCALIBUR INSURANCE
MANAGEMENT SERVICES, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-10-cv-00872)
Hon. A. Richard Caputo, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
October 8, 2013

BEFORE: FUENTES, GREENBERG and BARRY, Circuit Judges

(Filed: December 3, 2013)
_____

OPINION OF THE COURT
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before this Court following the District Court's order entered on January 11, 2013, denying plaintiff-appellant Carol Tokash's motion for a new trial. At the trial Tokash unsuccessfully attempted to establish that defendants-appellees Foxco Insurance Management Services, Inc. and Excalibur Insurance Management Services, commonly owned insurance agencies, discriminated against her on the basis of her age in terminating her employment as a licensed insurance underwriter. We will treat Foxco and Excalibur as Tokash's single employer and refer to them together as "Excalibur."

There is no question that prior to the trial Tokash seemed to have a strong case. After all, she was replaced by a much younger and apparently less qualified employee, Laura Moore, to undertake her duties; Excalibur previously had laid Moore off but later had asked her to return as an employee; Excalibur thought enough of Tokash's ability to ask her to train Moore; and when Excalibur terminated Tokash's employment she had passed the age at which Excalibur's employee handbook recited that it required its workers to retire. Yet the jury returned a verdict for Excalibur, apparently crediting its witnesses who testified that it never had enforced the mandatory retirement provision in the handbook and that it had legitimate business reasons for terminating Tokash's employment. Subsequently, Tokash moved for a new trial challenging both the sufficiency of the evidence to support the verdict and the adequacy of certain jury instructions. The District Court, however, after a thorough review of the evidence and

2

the jury instructions, denied the motion in an order and comprehensive memorandum opinion dated January 11, 2013. This appeal followed.

Tokash's position on appeal is weaker than it was when she moved for a new trial as our determination on the review of the order denying that motion to a large extent requires that we defer to the District Court's order which, in turn, that Court entered after deferring to the jury verdict. Accordingly, Tokash challenges two levels of decisions entitled to deference. Nevertheless, Tokash contends that the verdict was against the weight of the evidence—a conclusion she reaches by rejecting Excalibur witnesses' testimony and by second-guessing the jury's (and the District Court's) assessment of witness credibility. She also urges us to find error in the Court's refusal to quote from judicial opinions as she requested when charging the jury. Finally, she argues that the Court should have honored her request to inform the jury that the law forbids employers from publishing mandatory age-based retirement provisions in employee handbooks. For the reasons that we set forth we will affirm the order denying a new trial.

## II. BACKGROUND

Excalibur is a small company providing insurance-related services that employed Tokash as a licensed insurance underwriter. On March 20, 2008, Excalibur told Tokash that it would lay her off in the future and on August 29, 2008, after Excalibur had employed Tokash for 14 years and she had reached 66 years of age, Excalibur terminated her employment—a decision that she claims it based on her age in violation of the Age

3

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 955 et seq.

Tokash contended at trial that when Excalibur terminated her employment its management followed standard company policy, as reflected in its employee handbook. In the mid-1990s, Excalibur revised the handbook and added the mandatory retirement provision, which requires employees to retire at age 65. After she reached 65 years of age, Tokash asked Excalibur president Charles Volpe Jr. about the provision and he told her that it was up to her when she would retire. Volpe Jr. testified at the trial that Excalibur never had enforced the mandatory retirement provision of the handbook and that he was unaware of it until Tokash brought it to his attention.

Tokash was not the only employee that Excalibur laid off in 2008. Excalibur terminated the employment of four other employees as well, including Joe Schirra, who was older than Tokash, and Laura Moore, who was 34 years old, before it later terminated Tokash's employment in August of the same year. Moore's departure, however, proved to be temporary. According to Excalibur, it laid off the employees to offset a substantial revenue decline. To overcome the financial losses, Excalibur sought to improve its efficiency by laying off "expendable" employees while retaining those who could absorb new responsibilities.

Moore apparently straddled both groups. When Excalibur laid her off, it told her that she could return in about five months to assume Tokash's job and, additionally, again perform her previous duties involving regulatory reporting. Excalibur also told Moore that Tokash would train her that summer. Moore had worked at Excalibur for about five

4

years when Excalibur terminated Tokash's employment but, unlike Tokash, Moore never had performed underwriting services and was not licensed to do so. In fact, Excalibur did rehire Moore following her termination but she again left her employment at Excalibur after about five months, though this time did so on her own accord. At that time Excalibur brought back Schirra on a part-time basis to fill the position that Moore had been occupying and it later hired Caryn Czarkowski, who was then 42 years old, to fill the position on a permanent basis.

According to Tokash, one of her supervisors, Linda Williams, sympathized with her and told her that she and Schirra got "caught up" in the terminations due to their ages. Williams denied making that statement and testified that she had recommended Tokash's dismissal. Tokash also claimed that Eleanor Volpe, Volpe Jr's. mother, an Excalibur vice-president, called her after she had been terminated, questioning why Tokash had applied for unemployment compensation benefits and remarking that most people retired at her age. Eleanor Volpe claimed, however, that she had no say in Tokash's termination. Tokash eventually found a job at Wal-Mart at which she earned less pay while performing a more physically demanding and less flexible job than the one she had at Excalibur.

Following a four-day trial, the jury found in Excalibur's favor. Tokash moved for a new trial under Fed. R. Civ. P. 59, arguing that the verdict was against the weight of the evidence and that the District Court should have given the jury instructions that she had requested. The Court rejected both contentions and denied the motion. Tokash appeals

5

from the order denying the new trial, raising the same arguments that she raised in the District Court.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367, and we have jurisdiction under 28 U.S.C. §1291. We review the District Court's denial of Tokash's motion for a new trial for an abuse of discretion except to the extent that the Court based its ruling on the "application of a legal precept," our review is plenary. Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); see also Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 78 (3d Cir. 2009) (reviewing objection to jury instructions for abuse of discretion).

## IV. DISCUSSION

### A. Weight of the Evidence

To prevail on her argument that the District Court erred in declining to grant her a new trial because the verdict was against the weight of the evidence, Tokash must convince us of two things: that (1) the jury reached an unreasonable result and (2) the District Court abused its broad discretion in not setting that verdict aside. Thus, as we have indicated above, she has a double burden to overcome to be successful on her argument that the verdict was against the weight of the evidence.

A district court should not grant a new trial unless there is a "miscarriage of justice" or the verdict "cries out to be overturned or shocks our conscience." Williamson

6

v. Conrail, 926 F.2d 1344, 1353 (3d Cir. 1991). Where, as here, the "subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict" than in a more complicated matter. Id. at 1352. Further, a district court should not "substitute its judgment of the facts and credibility of the witnesses for that of the jury." Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (internal quotation marks omitted); see also Shanno v. Magee Indus. Enters., Inc., 856 F.2d 562, 567 (3d Cir. 1988).

The reason that a court of appeals' review of a district court's narrow review of a verdict is in turn even narrower is that judges at the appellate level "have not had the opportunity to observe the trial" and must make their determinations by evaluating the record. William A. Graham Co. v. Haughey, 646 F.3d 138, 143 (3d Cir. 2011); see Shanno, 856 F.2d at 567 ( "[I]t will not be said that a district court has abused its discretion if there is any basis in reason for its conclusion as to the weight of the evidence and the injustice of the verdict. . . ." (internal quotation marks and brackets omitted)). Thus, "when the trial court denies a Rule 59 motion based on the claim that the verdict is against the clear weight of evidence, that determination is virtually unassailable on appeal." 12 Moore's Federal Practice § 59.54[4][a] (Matthew Bender 3d ed. 2013); see Dawson v. Wal-Mart Stores, Inc., 978 F.2d 205, 208 (5th Cir. 1992) ("The reviewing court gives somewhat greater deference when the district court has denied the new trial motion, and left the jury's determination undisturbed." (citation omitted)).

With this deferential standard of review in mind, we review the applicable framework for Tokash's discrimination claim, aptly summarized by the District Court in

7

its comprehensive opinion denying Tokash's Rule 59 motion. The ADEA generally prohibits an employer from discharging an individual within the Act's protection because of her age. 29 U.S.C. § 623(a).[1] Courts ordinarily evaluate claims brought under the ADEA under the familiar burden-shifting McDonnell Douglas framework.[2] First, the plaintiff must establish a prima facie case of discrimination by producing "sufficient evidence to convince a reasonable factfinder" that: (1) she was over 40 years-old; (2) qualified for the position; (3) suffered an adverse employment decision; and (4) was replaced by younger employee, thereby permitting a "reasonable inference of age discrimination." Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004) (citing, inter alia, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973)). Once the plaintiff produces evidence to support her prima facie case of discrimination, the burden shifts to the defendant "to show that there was a nondiscriminatory reason for the adverse employment decision." Id. If the defendant offers a nondiscriminatory reason, the plaintiff must establish that the proffered reason either was not credible or that the employer's discriminatory intent was the "motivating or determinative cause of the employer's action." Id. The burden of persuasion never

---

[1] As mentioned above, Tokash also brought a claim under the PHRA, but we need not discuss that claim separately because it is governed under the same legal standards as the ADEA claims. Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

[2] Tokash does not argue that this is a direct evidence case based on the presence of the mandatory retirement provision in the handbook so that its mere presence could have justified the return of a verdict in her favor. Rather, her contention with respect to the District Court's treatment of the handbook is that the Court would not charge the jury that the mandatory retirement provision in the handbook was illegal.

8

shifts—it continues to rest with the plaintiff. <u>Smith v. City of Allentown</u>, 589 F.3d 684, 691 (3d Cir. 2009).

As the District Court observed, Excalibur did not contend that Tokash had not established a prima facie case of discrimination; instead, the trial turned on whether Excalibur's proffered business justification for discharging Tokash was pretextual. Witnesses at the trial described Excalibur's allegedly non-discriminatory reasons for terminating Tokash's employment, which, as the Court recounted, included testimony that Tokash had difficulty grasping new concepts, that Excalibur had received some complaints about her, and that her replacement, Moore, could perform Tokash's job while also helping with other work. In denying Tokash's motion for a new trial, the Court took into account Tokash's evidence that appeared to challenge these justifications. That evidence included the retirement provision in the handbook, Excalibur's apparent trust in Tokash's training ability, the circumstance that an employee other than Moore later performed the regulatory work with which Moore had been charged, and purported statements that Williams and Eleanor Volpe made to Tokash about her termination— statements that both witnesses at the trial disputed having made, the latter indirectly by claiming that she was not involved in Excalibur's management.[3] After assessing the

---

[3] At first glance, the District Court in its opinion denying Tokash's Rule 59 motion appeared to confuse Eleanor Volpe for another witness, Bonnie Volpe-Abdalla. It referred to Volpe-Abdalla while citing Tokash's testimony in which she clearly was relaying a conversation she had with Eleanor Volpe (Volpe Jr.'s mother), not Volpe-Abdalla, about her age and job prospects. But a review of the trial transcripts and the briefs in the District Court reveal this to be a harmless typo—the Court evaluated Eleanor Volpe's statement that she "had no knowledge of any layoffs or what the reason for the

9

evidence, the Court concluded that a reasonable jury could have returned a verdict for either side.

Tokash repeats her arguments on this appeal. We can group her contentions into three categories: First, Tokash in effect urges us to second-guess the jury's decision to credit certain witnesses' testimony over that of others. For instance, she argues that no reasonable jury could have believed Williams when she denied telling Tokash that Tokash and another employee got caught up in age-based terminations. The District Court rejected this argument, and Tokash does not advance a sufficient reason for us to disagree with the Court's disposition of the issue. See Haughey, 646 F.3d at 143 (noting that in deciding whether a new trial is warranted, a district court may not "substitute its judgments of . . . the credibility of the witnesses for that of the jury," a concern that is "even more pressing at the appellate level"); 12 Moore's Federal Practice § 59.54[4][a] ("The appellate court must ensure that the evaluation of the credibility of witness testimony remains the sole domain of the jury."); see also Kansas v. Ventris, 556 U.S. 586, 594 n.*, 129 S.Ct. 1841, 1847 n.* (2009) ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses . . . .").[4]

_____

layoffs were." J.A at 439 (174:23-24); ECF No. 88 at 11 (defendants' trial opposition brief).

[4] To be sure, a trial court, in appropriate circumstances, should assess the credibility of witnesses when ruling on a motion for a new trial. 9B Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2531 (3d ed.) (distinguishing motions for a new trial from motions seeking a judgment as a matter of law, noting that only on the former can "the trial judge . . . consider the credibility of witnesses"). The admonitions

A second set of Tokash's arguments addressing the evidence focuses on testimony that would have permitted the jury to find in her favor but does so without adequately dealing with contradictory evidence that the jury apparently ultimately credited. In this regard, she points to the employee handbook's retirement provision without citing testimony that the provision (much like the rest of the handbook) never had been enforced. Volpe Jr. testified that he had not been aware of the provision until Tokash mentioned it and that Excalibur never enforced it. In another example, Tokash references Eleanor Volpe's alleged statements about the reasons for Tokash's termination without accounting for evidence that Eleanor Volpe played no part in the layoffs. Likewise, Tokash continues to insist that Excalibur's decision to have her train Moore exposed her termination as nothing but a swap of an older employee for a younger employee. Yet she does not account for evidence that Tokash trained Moore only in the tasks that Tokash had performed as an Excalibur employee—at which Excalibur admitted she excelled— and not in the other work that Moore was set to assume upon her rehiring.

Tokash's remaining arguments draw inferences from evidence that the District Court correctly recognized were subject to competing interpretations. For example, Moore apparently ultimately did not do regulatory work upon her return to employment

---

we quote above are not to the contrary and merely reinforce the settled principle that "trial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree." See Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). Our point here is that appellate review of credibility determinations is extremely limited. See, e.g., Kode v. Carlson, 596 F.3d 608, 612 (9th Cir. 2010) ("Review of the merits of a Rule 59 motion for a new trial is confided to the discretion of the district court. Although the trial judge can weigh the evidence and assess the credibility of witnesses, [a court of appeals] may not.").

11

at Excalibur and Tokash claims that it was not essential that Moore do that work and, as Moore's testimony seems to suggest, Tokash could have undertaken it without Moore's help. Based on Moore's statement, Tokash argues that the jury could not have concluded reasonably that Moore's regulatory-reporting skills were one of the reasons that Excalibur had for replacing Tokash. But though that evidence certainly <u>allowed</u> the jury to discredit part of Volpe Jr.'s and Williams' testimony, it did not compel the conclusion—businesses frequently err in their decisions and miscalculate in their predictions. It well may be that Excalibur exercised poor business judgment in replacing Tokash, but it was not the jury's or the District Court's prerogative to question that judgment and it surely is not our function to review it. The relevant issue for the fact-finder was whether it was business judgment rather than invidious discrimination that motivated Excalibur to terminate Tokash's employment.

In considering the business judgment point we are reminded that more than 20 years ago we pointed out that "the ADEA is a discrimination statute and is not intended to handcuff the managers and owners of businesses to the status quo." <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1083 (3d Cir. 1992). Thus, we stated at that time:

> We also point out that York made a managerial decision which should not be second-guessed under the cover of ADEA. By creating two part-time positions in place of a single full-time position York was able to extend the hours that the switchboard was in operation and was thus able to give better service to the public. Furthermore, by setting the hourly dividing point between the two employees at 1:00 p.m. the necessity for a lunch break was eliminated and so was the need to take other employees from their work to cover the switchboard during that period. In the absence of evidence indicating that York acted with discriminatory intent we cannot understand

12

> how this reasonable business judgment can give rise to liability under the ADEA. See Dale v. Chicago Tribune, Co., 797 F.2d 458, 464 (7th Cir. 1986).

Gray, 957 F.2d at 1086-87. In sum, Tokash's arguments do not convince us that the jury's verdict was against the weight of the evidence or that the District Court abused its discretion in reaching the same conclusion.

### B. Jury Instructions

Tokash also takes issue with the District Court's jury instructions. First, she argues that the Court erred in following the Third Circuit model instructions instead of accepting the language she had offered with respect to pretext. See Third Circuit Model Jury Instructions: Civil § 8.1.1 (2011).

Our review of the jury charges is not abridged merely because the District Court patterned them on this Circuit's model instructions. See 9C Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2556 (3d ed. 2013) (explaining that even though form instructions "can be extremely helpful to a judge in preparing the charge, forms are, as those who have prepared them would be the first to insist, no substitute for careful thinking and preparation of the charge by the court itself"). That is we still ask whether the jury instructions "accurately and fairly set[] forth the current status of the law," keeping in mind that "[n]o litigant has a right to a jury instruction of its choice, precisely in the manner and words of its own preference." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995). Thus, a court does not give the model instructions special deference and "a trial judge has broad discretion concerning the particular language used." Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1124 (3d Cir. 1992).

13

Indeed, a court's "[j]ury instructions need not be perfect to withstand appellate scrutiny, and they will not form the basis for reversal if the charge as a whole—when considered in the context of the entire trial—fairly and adequately covers the issues presented, correctly states the law, and is not misleading." 9 Moore's Federal Practice § 51.41 (footnote omitted).

In objecting to the District Court's instructions dealing with pretext, Tokash points out that she proposed the following instruction:

> You may infer that Foxco and Excalibur acted with discriminatory intent on account of age if you find weaknesses, implausibilities, inconsistencies, incoherences or contradictions in its stated reasons for termination of Ms. Tokash.

Appellant's br. at 30.

The District Court adequately covered the pretext issue when it charged the jury. The Court first explained that Tokash did not need to prove intent directly: "Tokash is not required to produce direct evidence of intent . . . . Intentional discrimination may be inferred from the existence of other facts." J.A. at 15 (quoting instructions). Tracking case law, the Court then gave meaning and significance to pretext and distinguished it from business judgment:

> If you disbelieve Excalibur's explanation for its conduct, then you may but need not find that Ms. Tokash has proven intentional discrimination. In determining whether Excalibur's stated reason for its actions was pretext or excuse for discrimination, you may not question Excalibur's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of Excalibur or believe it is harsh or unreasonable. You are not to consider Excalibur's wisdom. However, you may consider whether Excalibur's reasoning is merely a cover-up for discrimination.

14

J.A. at 15.

We find nothing objectionable or "unbalanced," as Tokash contends, in the District Court's instructions. Contrary to what Tokash suggests—relying primarily on a student law review note and a companion article—the District Court did instruct the jury with regard to pretext ("If you disbelieve Excalibur's explanation for its conduct . . . you may consider whether Excalibur's reasoning is merely a cover-up"). Id. at 15. Tokash wanted the Court to recite an entire passage from our opinion in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994),[5] but she only was entitled to instructions that accurately summarized the applicable law and the disputed issues. Anderson v. Branen, 17 F.3d 552, 559-60 (2d Cir. 1994).

The same goes for her request on a charge of "falsity," which she finds that the Supreme Court's Reeves v. Sanderson Plumbing Products, Inc., decision best captured:

---

[5] The passage that draws Tokash to Fuentes actually limits the way plaintiffs can show pretext:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

32 F.3d at 765 (emphasis, citations and internal quotation marks omitted). Tokash's proposed instruction plucked her favored line out of context, disregarding the rest of the sentence and paragraph, which explained that plaintiff could not, as Tokash has done in her appellate brief, simply take aim at Excalibur's business judgment to show pretext.

15

"In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. 133, 147, 120 S.Ct. 2097, 2108 (2000).[6] Tokash asked the District Court to charge: "[i]f you find that the employer's explanation is false, then you may find that the employer is dissembling to cover up a discriminatory purpose." Appellant's br. at 35. The Court here restated what the Supreme Court said in Reeves in somewhat different terms: "[i]f you disbelieve Excalibur's explanation for its conduct, then you may but need not find that Ms. Tokash has proven intentional discrimination."[7] J.A. at 15.

As the latter example illustrates, a court should avoid using judicial prose in jury instructions as the language likely will confuse a lay jury, and the District Court here was well-advised to eschew it. See W.T. Rogers Co. v. Keene, 778 F.2d 334, 344 (7th Cir. 1985) (noting that court should avoid quoting judicial opinions in jury instructions because decisions contain "a level of diction [that is] inappropriate in an instruction directed to nonlawyers"); see also 9 Moore's Federal Practice § 51.20[1][a] ("[T]he trial

---

[6] In Reeves, the Supreme Court held that once a plaintiff establishes a prima facie case of discrimination, she can prevail in an age discrimination suit by showing that the employer's purported business justification for its adverse employment action was false or pretextual. The Court disagreed with the Court of Appeals for the Fifth Circuit's opinion that pretext could not be dispositive of discrimination where the plaintiff failed to introduce other evidence showing the employer's intent. In the part of the opinion on which Tokash has focused, the Supreme Court explained that pretext is circumstantial evidence of discrimination from which a reasonable jury could infer intentional discrimination.

[7] Actually there is not a sharp distinction between pretext and falsity as the concepts overlap.

16

court's instructions should avoid legalistic terms and should present controlling principles in a clear, concise, and forthright manner.").

The District Court's instructions accurately and fairly restated the law, including <u>Fuentes</u> and <u>Reeves</u>. In acceptable and straightforward terms, the Court told the jury to decide whether Excalibur's business reasons were excuses to "cover up" its discriminatory reasons for terminating Tokash's employment. The Court explained that if they were then, as the Supreme Court held in <u>Reeves</u>, the jury could hold Excalibur liable. In the exchange that Tokash quotes in her brief, the Court properly advised Tokash's counsel that although he was free to elaborate on pretext in his closing (by explaining how the evidence exposed Excalibur's justifications as excuses to discriminate), he could not use the Court as his spokesman. Appellant's br. at 34 (quoting J.A. at 518) ("The Court: I am not supposed to be telling them what the story is from counsel table.").

In addition to her false testimony and pretext arguments, Tokash contends that the District Court erred in not instructing the jury that "it is illegal for an employer to publish in its employee handbook any provision requiring its employees to retire upon achieving a particular age." J.A. at 17. It is true that the ADEA and the PHRA prohibit employers from publishing notices that indicate a "preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e); 43 Pa. Stat. Ann. § 955(b)(2). Consequently, printing and distributing mandatory retirement rules is generally impermissible. See 8 Lex K. Larson et al., <u>Larson on Employment Discrimination</u> § 134.01 (2d ed. 2013) (explaining certain exemptions).

But Tokash failed to explain adequately to the District Court and fails to explain adequately to us why the circumstance that it was illegal for Excalibur to publish the mandatory requirement provision supports her claim that it intentionally discriminated against her when it terminated her employment. Though her argument has surface appeal, the sole question for the jury was whether Excalibur discriminated against Tokash by reason of her age, not whether it was illegal to publish the retirement provision in the handbook. Of course, the handbook was useful to Tokash at the trial for she was able to point to the mandatory retirement provision to buttress her other evidence of discrimination, much like the court did in its decision in Ware v. Howard University, Inc., a case that Tokash cites in support of her argument. 816 F. Supp. 737, 746 (D.D.C. 1993) (finding after a bench trial, that a handbook provision in evidence in that case, coupled with other testimony, gave rise to an inference of discrimination). Excalibur, by contrast, was in the unenviable position of arguing that it did not enforce its own written policies. Volpe Jr., as the president of the company, had to convince the jury that the handbook "mean[t] nothing" to him, even if it presented legal issues and even though he testified that he was an attorney at "the top of his class" and a "pretty good trial lawyer." J.A. at 134, 180 (114:4-7).

As a result, an instruction that mandatory retirement provisions are impermissible would have prejudiced Excalibur without legitimately assisting the jury in deciding this case. It was not significant whether it was legal or illegal to publish the retirement provision in the jury's determination of whether Excalibur discharged Tokash on account of her age and thus discriminated against her. The relevant issue was whether Excalibur

18

terminated Tokash's employment by reason of her age regardless of whether its inclusion in the handbook was legal or illegal.

The District Court considered Tokash's request to give an instruction with respect to the illegality of the handbook provision on two occasions and properly rejected the request both times. The illegality of the publishing a mandatory retirement provision could make no contribution to Tokash's intentional discrimination employment termination claim because the illegality neither established nor informed any element of her ADEA case predicated on the termination of her employment. Therefore, it would have been prejudicial to Excalibur if the Court had instructed the jury that the publication of the provision was illegal. Cf. Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187-88 (3d Cir. 1990) (holding that statements about potential violations of collective bargaining agreements and labor laws had "little if any relevance or probative value" in an age discrimination case).

## V. CONCLUSION

For the reasons set forth above, we will affirm the District Court's order of January 11, 2013, denying Tokash's motion for a new trial.