# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2022

Lyle W. Cayce
Clerk

No. 21-40562
Summary Calendar

TAIWAN KING,

*Plaintiff—Appellant*,

*versus*

CARDINAL SERVICES, L.L.C.; RAEGAN LEMAIRE,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:19-CV-217

Before JOLLY, WILLETT, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:*

Taiwan King was driving a tractor-trailer when a similar truck driven by Raegan LeMaire, an employee of Cardinal Services, collided with King's truck. King was injured and sued Cardinal and LeMaire for negligence under Texas law. A jury found the defendants mostly at fault for the accident and

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

awarded King $884,331.25 in damages. King nevertheless appeals, arguing that because he conclusively proved that he suffered scarring, the jury was required by Texas law to award additional damages for disfigurement. He further argues that the verdict must be set aside because it resulted from improper compromise among jurors. We disagree and AFFIRM the judgment below in all respects.

I

The testimony at trial established the following facts. On January 3, 2019, LeMaire was driving a tractor-trailer carrying a coil tubing unit as part of his duties as Cardinal's employee. LeMaire was leading a convoy of similar trucks when he and the rest of the convoy pulled over and stopped on the right southbound shoulder of the highway. LeMaire and his convoy then attempted an illegal U-turn across the highway. At the same time, King's tractor-trailer was approaching via the left southbound lane. As LeMaire attempted the U-turn, he abruptly pulled in front of King and the two trucks collided, forcing King's truck off the road and into a ditch. King was seriously injured from the accident, requiring three surgeries: one to reattach a torn tricep, one to his finger to repair a broken bone, and one (an anterior fusion) on his neck.

King sued Cardinal and LeMaire in federal district court, invoking diversity jurisdiction and advancing several negligence-based claims under Texas law. Following a four-day trial, the jury found Cardinal and LeMaire 95% responsible for the accident and King 5% responsible. The jury awarded King damages for pain and suffering, lost earning capacity, mental anguish, physical impairment, and medical expenses totaling $884,331.25—a bit shy of the approximately $40 million King's counsel had asked for in his summation. But the jury rebuffed King's request for past and future

No. 21-40562

"disfigurement" damages,[1] awarding $0 in this category. King moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a), arguing that because he conclusively proved that he suffered scarring as a result of the accident, the jury was required to award disfigurement damages under Texas law. King further argued that a new trial was in order because he suspected the verdict represented an improper compromise among jurors. The district court disagreed on both points and denied King's motion, explaining during an oral hearing that

> The trial had almost no mention of scarring and no mention, that I can recall, of disfigurement. There was no effort to demonstrate to the jury any disfigurement. . . . [I]t does not surprise me that in the scheme of this case the jury found insufficient evidence of disfigurement to justify any separate award . . . . [T]he categories of disfigurement and physical impairment are overlapping. . . . [T]his jury was specifically instructed not to award damages twice for the same injury, and that [sic] there was nothing improper with their determination that they had adequately covered the minor scarring in this case with their substantial physical impairment award. I also find that there is no indication in this case that this was a compromised verdict. I think liability was very clear. . . . [T]he five percent [fault] [the jury] put on the Plaintiff is easily justified by the argument that the Plaintiff perhaps should have slowed down more.

King now appeals this denial of his motion for a new trial.

---

[1] In his summation, King's counsel asked for "[d]isfigurement in the past, ladies and gentlemen, that's just from his scars, $15- to $25,000. Disfigurement in the future, same thing, $15- to $25,000." This was the only mention of disfigurement at trial.

## II

We review a district court's ruling on a motion for a new trial for abuse of discretion. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). An appellate court "gives somewhat greater deference when," as in this case, "the district court has denied the new trial motion and left the jury's determinations undisturbed." *Id.* Moreover, "in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial . . . standard according to th[at] state's law controlling jury awards for excessiveness or inadequacy." *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008). Here, that state is Texas.

\* \* \*

King first argues that he conclusively proved disfigurement at trial and thus that the jury was not permitted to award him zero damages in this category. He relies on Circuit precedent recognizing that "[u]nder Texas law, once liability is established, a jury must award *some* amount for each element of damages that is objectively proved." *Jackson v. Taylor*, 912 F.2d 795, 797 (5th Cir. 1990). In particular, King asserts that the result in this case is controlled by a past decision in which we reversed a jury's award of zero damages for disfigurement and held that Texas law entitled the plaintiff to a new trial on this issue. *See Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 992 (5th Cir. 1989), *abrogated on other grounds as recognized in Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012). We noted that, as a result of the defendants' defective product, the plaintiff there had suffered "a large permanent scar going from his knee to his hip and across to his spine," and [t]here [wa]s evidence that he w[ould] require at least three more hip operations . . . , each potentially resulting in further permanent scarring. Under Texas law some award must be made for both his past and future disfigurement." *Jones*, 870 F.2d at 992. King argues that the same result must obtain in this case.

We disagree. In *Jones*, the defendants tried to justify the zero damages award for disfigurement on the grounds that "(1) the scarring of [the plaintiff's] leg and hip [wa]s not obtrusive enough to constitute disfigurement, and (2) [he] [wa]s not embarrassed by it." 870 F.2d at 991. In addition to rejecting the notion that "embarrassment" was a requirement for recovery of disfigurement damages, we concluded that the plaintiff's "scar me[t] an objective standard for a . . . disfigurement award." *Id.* Properly read, *Jones* simply held that the plaintiff's scars, the existence and characteristics of which were not disputed on appeal, constituted disfigurement as a matter of Texas law. We said nothing either about how the fact or severity of scarring was to be proven, or about the strength of evidence of scarring that would require a new trial if a jury failed to award damages for disfigurement.

On that score, King faces an uphill battle under Texas law: because he "attacks the factual sufficiency of an adverse finding on an issue on which [he] ha[d] the burden of proof, [he] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. [A] court of appeals must . . . weigh all of the evidence, and can set aside a verdict only . . . if [it] is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). And only "[i]f the jury's failure to award damages . . . is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias" will "a new trial . . . be required." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003). King fails to clear this high bar for setting aside the jury's award of zero damages for disfigurement.

Texas law defines "[d]isfigurement . . . as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960). As is clear from this

definition, "[t]he amounts of damages awarded for . . . disfigurement are necessarily speculative and each case must be judged on its own facts." *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80–81 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *accord Figueroa v. Davis*, 318 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2010, no pet.). And since "physical damage awards such as . . . disfigurement are necessarily speculative," they are "particularly within the jury's province to resolve. In assessing personal injury damages, the jury has wide latitude in determining the amount of the award." *Jackson v. Golden Eagle Archery, Inc.*, 143 S.W.3d 477, 486 (Tex. App.—Beaumont 2004, no pet.).

In this case, the evidence offered at trial of scarring amounting to disfigurement was very scant. The only reference to "scars" during the entire four-day trial was during the following exchange with King on direct examination regarding his injuries following the accident:

> Q: . . . [A]t the scene you were complaining about left shoulder pain. Do you remember that?
>
> A: I complained about pain. Can I say something?
>
> Q: Sure.
>
> A: Okay. Pain, you know, when you say pain, pain, you know, when you talk about pain, you know, I seen this here. *I have got scars from that pain here (indicating).* I had a knot right here because the muscle got ripped off the elbow, which had to – that shriveled up, which had to be put back on with pins. Then no feeling right here (indicating) up in my hand; right? Then the shooting pain from my neck going down my arm. So when you say pain, all I know is pain, you know? Or what I was feeling, you know? So I can't justify pain. All I know is pain. I knew before the wreck, I had no pain. I was happy, married, you know, excited. Then after the wreck, all of the sudden my life changed, and I am introduced to pain. Previous before all of this, the pain I knew was a toothache.

No. 21-40562

(emphasis added). Apart from this glancing mention, there were no other references to King's "scars" in any witness's testimony. Nor was there any non-testimonial evidence such as photographs or medical records that would have enabled the jury to determine the extent of any alleged scarring.

Although Texas law mandates an award of *some* amount for every form of damages that is conclusively proven, "the jury remains the ultimate judge of credibility and retains primary responsibility for awarding damages. . . . [T]o ensure an award for a particular element of damages, a plaintiff must present objective and uncontroverted evidence on that element. . . . The jury is entitled to weigh the credibility of the evidence and cannot be compelled to award damages if it concludes that the evidence is untrustworthy." *Jackson*, 912 F.2d at 797. All the jury heard about "scars" during the trial in this case was a single fleeting mention from King himself.

To be sure, the parties disagree about what transpired in the courtroom at the point where the transcript reads, "I have got scars from that pain here (indicating)"; according to King, "the transcript reflects that [he] showed the jury the scars from [his] injuries"—whereas Defendants, noting that "King was dressed in a suit and tie" at trial, claim that he was merely "pointing to an area of his arm" and that "[t]here is no evidence that he ever displayed his alleged scars to the jury." But this disagreement is ultimately immaterial to our analysis. If King displayed his alleged scars to the jury, the jury evidently either did not see any scarring or considered any scarring so minor as to be essentially imperceptible, or perhaps non-permanent.[2] On the

---

[2] Jurors' impressions from "view[ing] [a plaintiff] when he [i]s brought into the courtroom in the[ir] presence" are evidence that may legitimately inform a finding regarding disfigurement. *Baptist Mem'l Hosp. Sys. v. Smith*, 822 S.W.2d 67, 80 (Tex. App.—San Antonio 1991, writ denied); *accord Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 759 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 165 (Tex. App.—Eastland 2009, pet. dism'd); *Press Energy Servs.,*

No. 21-40562

other hand, if King did *not* show the jury his alleged scars, then the only evidence of the same that was presented at trial was a passing mention of "scars" during King's direct examination. This verbal allusion falls far short of proving disfigurement so definitively that the zero damages award must be set aside. The jury is free to "disbelieve a witness though he or she is neither impeached nor contradicted." *Tatum v. Huddleston*, 711 S.W.2d 367, 369 (Tex. App.—Texarkana 1986, no writ); *accord Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.—San Antonio 1997, no writ); *Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.); *Barker v. Coastal Builders*, 271 S.W.2d 798, 802 (Tex. 1954).[3]

Texas caselaw on this subject supports the district court's holding here that the evidence at trial was not so unanswerable as to compel the jury to award disfigurement damages. For instance, one state appellate court held that it "ha[d] no basis to disturb [a] jury's award of zero damages for future

---

*LLC v. Ruiz*, No. 09-19-00179-CV, 2021 WL 3013313, at *20 (Tex. App.—El Paso 2021, no pet.); *see also Molina v. Tex. Emp. Ins. Ass'n*, 486 S.W.2d 119, 121 (Tex. Civ. App.—Dallas 1972, no writ) ("The jury had an opportunity to observe [plaintiff's] appearance at the time of trial and were free to reach their own conclusions from such observation and the evidence as to his probable future earning capacity.").

[3] A kind of exception to this principle is that "a fact may be established as a matter of law by the testimony of an interested witness provided his testimony is not contradicted by another witness or by attendant circumstances, is clear, direct and positive, and is free from contradiction, inaccuracies and circumstances tending to cast suspicion upon it." *Moss v. Hipp*, 387 S.W.2d 656, 659 (Tex. 1965). But this does not "imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then [it] would only raise a fact issue to be determined by the trier of fact." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). The bar for a fact issue as to such testimony's credibility is not high; it has been held that testimony that, while "not contradicted by another witness, when considered as a whole [wa]s somewhat less than clear, direct and positive," and thus the fact-finder "was not required to accept the same as a matter of law." *Moss*, 387 S.W.2d at 660. We think the same is true of King's single mention of "scars" in his testimony.

disfigurement" in connection with a plaintiff's leg injury, explaining, "the record does not contain any images of [the plaintiff's] leg in its current state. [He] showed his leg to the jury at trial, but we have no way to judge the condition of [his] leg or scarring at the time the jury saw it." *Blevins v. Pepper-Lawson Constr., L.P.*, No. 01-15-00820-CV, 2016 WL 5942220, at \*10 (Tex. App.—Houston [1st Dist.] Oct. 13, 2016, no pet.). Another Texas court went further, agreeing with a defendant on appeal from "that the evidence was legally insufficient to support the trial court's finding that [the plaintiff] sustained . . . disfigurement. . . . [He] had a 2.5 centimeter laceration under his lip. However, there was no evidence that he had any scarring or other type of disfigurement as a result of his injury." *Pendergraft v. Carrillo*, 273 S.W.3d 362, 367–68 (Tex. App.—Eastland 2008, pet. denied). Finally, a Texas appellate court held, in a case "in which there was conflicting evidence about the severity of [a plaintiff's] scarring and weight gain," that "the jury had the discretion to resolve the conflicts in the evidence . . . and to refuse to award damages." *McKnight v. Calvert*, 539 S.W.3d 447, 460 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The court noted that the plaintiff "testified that he has 'a scar' on his neck as a result of the surgery," but that "[t]he record does not indicate that the jury was ever shown the scar." *Id.* at 459. The evidence of disfigurement in this case is hardly more conclusive than in *McKnight* or either of the other cases just mentioned.

King also argues that other uncontroverted testimony proved scarring so conclusively as to compel an award of disfigurement damages; in particular, he points to the testimony of doctors who performed surgery on his neck following the accident, who explained to the jury how surgery of that type is performed. King's theory is essentially that although none of the testimony in questioned mentioned scarring, the jury should have inferred that scarring occurred from the incisions made to perform the surgery. But King cites no Texas caselaw holding that juries are required to make such

inferences and award disfigurement damages based on the same. On the contrary, the cases we have identified on the issue *reject* the proposition "that surgery necessarily leaves scars, and scars are necessarily disfiguring, so that conclusive proof of surgery is conclusive proof of disfigurement." *Belford v. Walsh*, No. 14-09-00825-CV, 2011 WL 3447482, at *8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.); *accord Kosaka v. Hook & Anchor Marine & Watersports, LLC*, No. 03-11-00134-CV, 2012 WL 5476844, at *6 (Tex. App.—Austin Nov. 8, 2012, no pet.); *see also Keeler v. Richards Mfg. Co., Inc.*, 817 F.2d 1197, 1201 (5th Cir. 1987) (applying Texas law to hold that mere fact of surgery is insufficient evidence of scarring amounting to disfigurement).

\* \* \*

We also agree with Cardinal and the district court that the jury's award of zero damages for disfigurement should stand because the harms for which King seeks such damages may have been compensated with awards in other categories. The Texas Supreme Court has instructed that "[i]f only one category of the jury's award is challenged, and the award in that category is not against the great weight and preponderance of the evidence unique to it, the court's inquiry should end there. A court should not consider losses or injuries for which the jury could have compensated the injured party under a different category." *Golden Eagle*, 116 S.W.3d at 773. And it is well-settled that the various "categories of non-economic damages"—"pain, suffering, mental anguish, disfigurement, and physical impairment"—"may overlap." *Sanchez v. Balderrama*, 546 S.W.3d 230, 237 (Tex. App.—El Paso 2017, no pet.) (citing *Golden Eagle*, 116 S.W.3d at 770); *accord Day v. Domin*, No. 05-14-00467-CV, 2015 WL 1743153, at *2 (Tex. App.—Dallas Apr. 16, 2015, no pet.). Texas courts have accordingly held that when a "jury, in applying the charge, could have considered mental anguish related to [a plaintiff's allegedly disfigured] appearance in awarding past mental anguish damages, [an appellate court] must consider evidence on that point in [its] review."

*Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 846 (Tex. App.—Fort Worth 2018), *aff'd*, 627 S.W.3d 197 (Tex. 2021). Another Texas case, duly cited by the district court below, upheld a zero damages award for disfigurement, explaining, "[a]ll of the negative impacts from the injury that [the plaintiff] testified about are covered by the physical impairment, physical pain, and mental anguish elements of damages for which the jury awarded [him] damages. There is no evidence . . . that either the injury to his arm bones or the scar from the surgery caused [him] to suffer damages unique to the disfigurement element. . . . [He] did not testify that he was embarrassed by the scar or the fact that his arm bones or, in the future his wrist bones, might be asymmetrical." *Ochoa-Cronfel v. Murray*, No. 03-15-00242-CV, 2016 WL 3521885, at *6 (Tex. App.—Austin June 22, 2016, no pet.). This court, too, has recognized that "[u]nder Texas law, . . . to recover damages for disfigurement, [a plaintiff] must prove that she was not compensated for the scarring in the trial court's award of pain and suffering, mental anguish and physical impairment." *Perkins v. United States*, 81 F.3d 155, 1996 WL 101417, at *1 (5th Cir. 1996) (unpublished). Hence, "[i]n th[at] case, we f[ound] that the trial court compensated [the plaintiff] for her disfigurement in its awards for mental anguish and physical impairment." *Id.* Here, the jury awarded King substantial damages for pain and suffering, mental anguish, and physical impairment. The jury could reasonably have considered these awards adequate compensation for whatever disfigurement King suffered.

## III

Finally, we are unpersuaded by King's argument on appeal that a new trial should be granted because the record indicates that the verdict reflected an improper compromise among jurors. "A compromise verdict occurs when a jury which is unable to agree on liability compromises that disagreement and awards inadequate damages." *Pagan v. Shoney's, Inc.*, 931 F.2d 334, 339 (5th Cir. 1991). Seizing on our observation in a past case that "[a]n award of

only nominal damages coupled with . . . a disregard for uncontested and obvious damages . . . raises the suspicion of a compromise verdict," *id.*, King asserts that the verdict in this case likely resulted from improper compromise "because (1) liability was closely contested, and (2) undisputed damages were not awarded. . . . [T]he jury gave King a complete victory on liability while denying [him] damages on an element of damages (disfigurement) for which there was objective proof." It thus appears that King's argument that the verdict likely arose from compromise is premised on a contention of his that we have already rejected—that is, that the evidence at trial proved disfigurement so definitively that the jury was obligated to award him disfigurement damages. Naturally, we find his argument regarding possible compromise in the verdict to be no more meritorious.

## IV

For these reasons, the judgment of the district court is AFFIRMED.